JS 44  (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

PRISCILLA M. JOHNSON

**DEFENDANTS**

School District of Philadelphia, Jan Smit, Marissa Litman and Michelle Chapman

**(b)** County of Residence of First Listed Plaintiff  **Philadelphia**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **Philadelphia**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Olugbenga O. Abiona, P.O. Box 3326, Cherry Hill, NJ 08034, 215-833-8227

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII, 42 USC 2000e et seq, Section 1981 and 1983 of the Civil Rights Act.

Brief description of cause:
Race motivated hostile work environment and retaliation.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   9/1/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA _____

Address of Defendant: _____ 440 North Broad Street Philadelphia, PA 19130 _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/1/2023 _____ _____ 57026

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.      Federal Question Cases:**

☐  1. Indemnity Contract, Marine Contract, and All Other Contracts
☐  2. FELA
☐  3. Jones Act-Personal Injury
☐  4. Antitrust
☐  5. Patent
☐  6. Labor-Management Relations
☑  7. Civil Rights
☐  8. Habeas Corpus
☐  9. Securities Act(s) Cases
☐  10. Social Security Review Cases
☐  11. All other Federal Question Cases
        *(Please specify):* _____

**B.      Diversity Jurisdiction Cases:**

☐  1. Insurance Contract and Other Contracts
☐  2. Airplane Personal Injury
☐  3. Assault, Defamation
☐  4. Marine Personal Injury
☐  5. Motor Vehicle Personal Injury
☐  6. Other Personal Injury *(Please specify):* _____
☐  7. Products Liability
☐  8. Products Liability – Asbestos
☐  9. All other Diversity Cases
        *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Olugbenga O. Abiona, Esquire _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐  Relief other than monetary damages is sought.

DATE: 9/1/2023 _____ _____ 57026

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------

PRISCILLA M. JOHNSON             :   CIVIL ACTION No.
        Plaintiff,            :
   vs.                          :
                              :
SCHOOL DISTRICT OF PHILADELPHIA   :
JAN SMIT, MARISSA LITMAN, and     :
MICHELLE CHAPMAN           :
        Defendants          :

---

### COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.     Plaintiff, Priscilla M. Johnson, in the above captioned matter, claims a sum in excess of

One Hundred Thousand Dollars ($100,000.00) in damages and upon her causes of action,

avers as follows:

2.     This action for monetary damages and other appropriate relief is brought by Plaintiff to

redress violations by Defendants, School District of Philadelphia (hereinafter "School

District"), Jan Smit, (hereinafter "Smit") and Marissa Litman (hereinafter "Litman")

rights secured to Plaintiff by the laws of the United States of America and the

Commonwealth of Pennsylvania.

3.     This action arises under the Civil Rights Act 42 U.S.C. 2000e et seq, (Title VII), and the

Pennsylvania Human Relations Act, ("PHRA"), which prohibit race discrimination and

retaliation because an employee engages in protected activities under the respective

statutes and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper,

unlawful, willful, and deliberate discrimination and retaliation by Defendants.

1

## II.   **JURISDICTION AND VENUE**

4.   The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1331, which provide for the original jurisdiction of Plaintiff's claims arising under the laws of the United States of America.

5.   Plaintiff has exhausted her administrative remedies before bringing her Title VII, ADA, and PHRA claims to Court.  On July 10, 2023, the EEOC issued Plaintiff her right to sue letter.  See attached copy.   The venue of this Court is proper pursuant to the dictates of Title 28 U.S.C. §1391 (c).

## III.   **PARTIES**

6.   Plaintiff, Priscila Johnson, is a citizen of the United States and the Commonwealth of Pennsylvania, who currently resides in Philadelphia, Pennsylvania.

7.   Defendant, School District of Philadelphia ("School District or SDP"), is an agency of the City of Philadelphia, with its offices located at 440 North Broad Street, Philadelphia, PA 19130.

8.   Defendant, Jan Smit, Caucasian male, is a citizen of the United States and currently resides within the Commonwealth of Pennsylvania, and at all times relevant to this action was Plaintiff's supervisor.  Defendant Smit is being sued in his individual capacity and was acting under color of state law.

9.   Defendant, Marissa Litman, Caucasian female, is a citizen of the United States and currently resides within the Commonwealth of Pennsylvania, and at all times relevant to this action, was Plaintiff's second level supervisor. Defendant Litman is being sued in her individual capacity and was acting under color of state law.

2

10.  Michelle Chapman, is a citizen of the United States and currently resides within the Commonwealth of Pennsylvania, and at all times relevant to this action, SDP's Deputy of Labor and Employee Relations.  Defendant Chapman is being sued in her individual capacity and was acting under color of state law.

IV.  **BRIEF STATEMENT OF FACTS**

11.  Plaintiff is an African American woman and was hired by SDP, in or about 2002 as a Special Project Assistant in the Office of Specialized Services.

12.  Plaintiff then became a Program Manager in or about July 2020, in Compensatory Education & Special Education.

13.  Plaintiff asserts that she has been subjected to harassment and a hostile work environment, that was racially motivated, and also was subjected to retaliatory actions for engaging in protected activities under Title VII and the PHR.A.

14.  On October 31, 2022, the compensatory education team which included Patricia Haines (black/female) and Plaintiff was transferred to the Office of Finance from the Office of Specialized Services.

15.  Plaintiff joined the School District of Philadelphia around September 2002 with the Office of Specialized Services servicing students with special needs, their families, attorneys and other stakeholders.

16.  During the bulk of her time with the School District, Plaintiff's initiative was to oversee and maintain compensatory education for families of children with special needs that sued the School District due to a lack of service.

17. During the December 1, 2022, child count, it was reported to have 21,000 with special needs on record, and of that 21,000, there were approximately 5,000 plus students with lawsuits, and the number continued to grow.

18. For approximately ten years or so, Plaintiff managed compensatory education ("Comp Ed") and all its components solo; despite the growing population, the amount of work and time to maintain it, and the desperate need for help.

19. In February 2017, Plaintiff discontinued working with compensatory education and shortly thereafter, a team of five people was put together to maintain Comp Ed that Plaintiff was previously assigned to do by herself, but this team of five was short lived; less than a year, as they either left the School District or obtained other in-house positions.

20. On or about November 9, 2022, after working in the Finance Office for about a week and a half, a zoom meeting was called for both Patricia Haines and Plaintiff by her supervisor.

21. During the November 9, 2022, meeting, Smit, Assistant Director of Financial Services, informed Plaintiff and Ms. Haines that while reviewing their emails in Comp Ed, they received 15 emails in one day and he could not understand why they were unable to answer these emails.

22. Without his full understanding regarding the components of the work and the reason for the delay in response to the emails, Smit falsely informed Plaintiff and Ms. Haines that their performance lacked productivity.

23. Smit's remarks left Plaintiff shocked, speechless, and offended. Plaintiff could not understand how only after one and a half weeks of working with the Financial Services

team, Plaintiff was being attacked, questioned, and judged about her work ethic/performance without rationale.

24.     Shortly thereafter during another team meeting, Plaintiff was attacked regarding her professional disagreement about a particular matter concerning the work. After stating her disagreement with the suggestion provided by leadership, the Director, Marissa Litman (Caucasian) expressed that she was not trying to be combative and proceeded to ask Plaintiff, "why not?" Confused about why she felt the need to place a disclaimer during a professional meeting to discuss ways to support the work; Plaintiff explained to her that Plaintiff wasn't being combative and politely expressed her concerns regarding the limitations of the proposed suggestions. M

25.     Litman's comment referring to Plaintiff as being "combative" was a stereotypical racial comment, suggesting that Plaintiff was an "angry black woman".

26.     During a 1:1 meeting with Smit, he asked Plaintiff if she had anything to discuss, and Plaintiff respond that she did not. Smit responded in a condescending tone, as he had once before, "You never have anything for me, so you are just holding it down".  Plaintiff was very confused by his statement and condescending tone as it made her feel very uncomfortable, because she was only performing the components of her job as she had for the past several years.

27.     During a team meeting with Patricia Haines, Litman and Smit, Litman stated to Patricia Haines and Plaintiff, "I don't know what it is with you, either it's your personalities or you just shut down on purpose. I feel like you guys are this big black box."

28.     Plaintiff took offense to the term "Big Black box" by Litman, and felt it was a racial comment by Litman because of Haines' and Plaintiff's race and color.

5

29.   This statement has both racial and personal undertones that are unacceptable for the work environment.

30.   Litman went on to state that she feels Plaintiff and Haines didn't like to share information. Litman appeared to be very agitated, and her tone had increased which made Plaintiff feel very threatened, belittled, and distressed.

31.   Plaintiff replied respectfully and tried to maintain a safe and professional environment by stating, "I have learned to listen carefully before speaking, and if something doesn't require a response, then I will not respond. If I had responded back in any tone, then you would be calling me other things such as an angry Black woman, combative, as well as characterizing me as not getting along well with others, aggressive, etc."

32.   Litman responded that she doesn't like when it's quiet and prefers collaboration. Plaintiff responded that she didn't say she wasn't going to collaborate, but if she felt or detected the conversation is going to get heated or escalated, she would keep quiet. This back and forth with Litman went on for a bit, and Plaintiff told her this right here is when she would stop talking, but Litman repeated herself once more.  Plaintiff continued to refrain from speaking as Litman's comments became more offensive, aggressive, and unprofessional. Litman's references of "us" and "black box" were full of microaggressions that were not related to the purpose and scope of the work or this meeting.

33.   During a team meeting with Haines, Litman, and Smit, Litman referred to Haines and Plaintiff as "gas lighters" when responding to emails. At that moment Plaintiff understood she and Haines were being called liars by Litman.  Plaintiff defended herself

by indicating that they were not liars, and just stated the process and any other
information as needed.

34.     Plaintiff researched the term "gas lighter", and it was described as a manipulator, mind
controller, providing false information, misleading others, taking advantage of others, etc.

35.     At that point, Plaintiff was just speechless to know that her boss labeled and belittled
them with such a word.  Plaintiff was left utterly offended and felt to be in a very hostile
and uncomfortable work environment. Plaintiff also felt that her work was being judged
and scrutinized by individuals who again do not know the work or have any experience
doing the work.

36.     On March 1, 2023, at 3:58 p.m., Litman indicated during their team meeting that some
individuals within the office had contracted or been near someone exposed to COVID-19.
She went on to state that "it seems to be coming back as people around here are catching
it". At first, Patricia and Plaintiff did not understand what Litman meant by that, but after
the meeting Plaintiff realized that several people who sat near Plaintiff and Haines were
not in the office.

37.     Patricia Haines went back to Litman's office to ask if anyone who sat close to her and
Plaintiff had caught COVID, and Haines told Plaintiff that Litman was not straight
forward with her answer. According to Patricia Haines, Litman stated that Haines and
Plaintiff normally have on their masks, so they were not exposed to the virus. Haines
went on to tell Litman that they did not receive notice from her or employee health that
they had been in close contact with one or more individuals who tested positive to
COVID as they were required to do.

7

38.   It was obvious that the rest of the team were made aware of the COVID exposure in the office and allowed to work from home as a safety precaution.  Plaintiff and Haines were not provided that same privilege nor were they properly informed of the spread.

39.   Plaintiff informed Litman that she did have close (unmasked) contact with one of the employees who was not present. Litman then sent the following statement in an email on March 1, 2023:  "Hi All, attached is a notification regarding a COVID case in the Department. I just learned that this did not go out to everyone originally because not everyone on this chain was deemed a close contact. Sharing it with the full group now to keep everyone in the loop. Those deemed close contacts were previously notified".

40.   The letter sent out by Litman stated the following: "We consider the health and safety of our students and staff to be of extreme importance and are working closely with the Philadelphia Department of Public Health (PDPH) to help mitigate the spread of COVID-19. This letter is to inform you that today, 02/27/2023, we were notified that a student or staff member in your building has tested positive for COVID-19. In accordance with the Health Insurance Portability and Accountability Act (HIPAA), the Family Education Rights and Privacy Act (FERPA) and other state laws, we cannot share any additional information about the person. You have been identified as a close contact with the positive case. You will be required to mask for 10 days from 02/24/2023 through 03/05/2023 regardless of vaccination status. Failure to follow the SDP policy will result in disciplinary action."

41.   Plaintiff responded to Litman's email with the following: "Thank you as I was in close contact doing interviews if that particular staff tested positive. In addition, if true, then those interviewed should be notified as they were not masked. Enjoy your day".

42.    In return, Litman stated the following: "Thanks for the follow up - I will check to see if they were already notified or not".

43.    Situations like this among others made working with Smit and Litman, very uncomfortable and untrustworthy.

44.    On March 7, 2023, Plaintiff had a 1:1 meeting with Smit where discussed expectations.

45.    Plaintiff was told in a February 15, 2023, team meeting that they would work together to set some processes in place, discuss and get feedback. This process and conversation never took place, and as the Program Manager who had processes in place that were developed and approved by OSS Director, Executive Director, Deputy and Chief, it was never taken into consideration. These processes developed by Plaintiff were shared with Litman and the team.

46.    In addition, Plaintiff shared with both Smit and Litman as requested what the newly hired clerk should be doing as the previous clerks but was told that they have other ideas that they want him/her to do which does not include taking the work off Plaintiff's hands to complete.

47.    Defendants were constantly making decisions that were not aligned with work and the processes to getting it done without understanding or ever touching the work.

48.    While going through the expectations, Plaintiff had asked several questions because many things were not clear while going through it. Some of the questions included the following:

1. Plaintiff: How did you come up with such a timeline?

   a. Smit: "I just did"

   b. Plaintiff: "No, how did you specifically come with such a timeline?

c. Smit: "My gut feeling".

2. Plaintiff: "The legal settlement agreement states payments are within 60 days and some 70 or 75 days to process and pay vendors. Why are you making us process invoices within two weeks?"

a. Smit: "Well you'll not get it done in within 60 days".

b. Plaintiff: "If we are struggling to get people paid with the legal agreement timeframe, why would you think we can process payments within two weeks? You are making us work less than the timeline allows us and it's only two of us. Your document is nonsense, unrealistic, and not doable. No one up to the Chief has ever changed the timeline to give us less time to do our work".

49.    Plaintiff indicated to Smit that they do not use their gut feelings to determine processes and gut feelings do not get the job done. It was also unprofessional for Smit to create such a document as expectations using his "gut feelings".

50.    Furthermore, Plaintiff informed Smit that his expectations were unrealistic with no operational processes, not doable because they were currently working late hours and weekends to do the work within the time frame of the legal settlement agreement and still struggle to get it done. The expectations have no baseline and are not measurable. Smit stated to Plaintiff that she was angry, (again, the "angry black woman" connotation). Plaintiff simply said "Oh here we go with the words; just because I am expressing myself does not make me angry".

51.    The angry black woman stereotype has penetrated many parts of American culture, including the workplace. This pervasive stereotype not only characterizes black women as more hostile, aggressive, overbearing, illogical, ill-tempered and bitter, but it is also

holding them back from realizing their full potential in the workplace and shaping their

work experiences overall. (Harvard Business Review).

52. Anger is a commonly expressed emotion in the workplace. Research has found that when

someone sees a black woman become angry, they're likely to attribute that anger to her

personality rather than an inciting situation. Neither was true in Plaintiff's situation.

53. The timelines presented by Smit at this meeting required Plaintiff and Haines to process

invoices at a rapid speed, ignoring all of the intricate steps needed to bring each vendor

payments to date.

54. In addition, Defendants were micromanaging the Comp Ed emails, phone logs, etc. and

selecting who to respond to, when to respond, and how to respond. This caused them to

neglect other pressing issues and components of the work.

55. On Sunday, April 9, 2023, at 10:11 pm, Patricia Haines and Plaintiff received an email

from Smit titled "Concerns".

56. In this email Smit goes on to again attack Plaintiff and Haines' professionalism,

productivity, character, assumed lack of customer service, and fictitious statements about

their behavior that is (in Smit's words) "creating an uncomfortable work environment". A

meeting was scheduled for April 11th at 1pm to discuss the claims that were expressed in

Smit's email.

57. The past few months have been filled with constant unwarranted attacks towards

Plaintiff's work ethic, knowledge of the work, and personality by Smit and Litman.

58. Plaintiff had left work many days defeated and unsure of her value to this team. To meet

specific timelines, Plaintiff had worked after her contractual hours and even completed

work over the weekends and holidays. Yet, Plaintiff was never praised for a job well

done, but instead sent emails after the workday regarding things Plaintiff allegedly did not do. There was never a positive solution to the problem.

59.   Plaintiff has endured the racial microaggressions from Smit and Litman about her alleged "anger, aggressiveness, her dress, and mannerisms" (which were all false). It became extremely difficult for Plaintiff to work in an environment that was unsupportive, unproductive, and appears to have an issue with a different look and approach to the work.

60.   These past incidents have taken a toll on Plaintiff's physical and mental health, which has led Plaintiff to higher levels of stress and heart-related issues.

61.   Plaintiff has been subjected to a racially motivated hostile work environment by Defendants that is threatening to her overall health and wellness.

62.   On or about April 10, 2023, Plaintiff filed an internal complaint of racially motivated hostile work environment with the School District against Smit and Litman.

63.   On or about April 24, 2023, Plaintiff had a meeting with Colleen Osborne about her complaint.

64.   The School District failed to conduct a good faith investigation of Plaintiff's complaint.

65.   Osborne told Plaintiff that just because someone was calling her names didn't mean it was race discrimination.

66.   Rather than take remedial action against Smit and Litman for the hostile work environment Plaintiff was being subjected to, the School District acquiesced in the racially motivated hostile work environment Plaintiff was being subjected to.

67.   On May 16, 2023, Plaintiff was subjected to retaliatory and unwarranted Performance Improvement Plan (PIP) by Smit and Litman.

68.   The PIP was being used as a pretext to terminate Plaintiff's employment with the School District.

69.   For twenty (20) years of Plaintiff working with the School District, Plaintiff was never written up or at threshold of being terminated.

70.   The PIP was based on false allegations against Plaintiff by her supervisor, Smit.

71.   On June 26, 2023, Plaintiff dual filed her complaint of race motivated discriminatory action and retaliation against Defendants.

72.   Following Plaintiff filing her EEOC charge against Defendants, Plaintiff was subjected to further retaliatory actions by Defendants.

73.   On August 21, 2023, plaintiff was called into a meeting with Jan Smit.

74.   When Plaintiff received an invite for the meeting, the invite only showed Jay Smit and Plaintiff as the participants in this meeting.

75.   However, when Plaintiff arrived for the meeting, Plaintiff was informed by Jay Smit that another person will be joining them at the meeting, which turned out to be Michelle Chapman, SDP's Deputy of Labor and Employee Relations.

76.   Jay Smit then handed Plaintiff a copy of a final summary PIP report, dated August 3, 2023, and stated that Plaintiff was to receive another PIP seven (7) weeks prior when the improvement plan ended, but instead was issued a report by Smit recommending Plaintiff's termination of her employment from the SDP.

77.   Michelle Chapman  requested that Jay Smit should read the background information in the report to Plaintiff word for word, the conclusion and the recommendation to terminate Plaintiff's employment with SDP.

78.   Plaintiff was asked by both individuals if she had any questions, and Plaintiff responded, "I just received the summary and have not had any time to review it".

79.   Plaintiff requested to submit a rebuttal to the report, and Michelle Chapman stated that it was not mandatory or required.

80.   Plaintiff informed Michelle Chapman that Jay Smit stated that Plaintiff would have the opportunity to write a rebuttal, and Michelle Chapman stated, "I was not aware of this, but again this is not mandatory or required".

81.   Plaintiff was then given a week from August 23, 2023, to submit her rebuttal.

82.   Plaintiff requested additional time until the close of business on Tuesday, August 29, 2023, to submit her rebuttal, but Michelle Chapman declined and stated she needs it sooner by Monday, August 28, 2023, close of business.

83.   Plaintiff asserts that she has been subjected to racially motivated harassment, hostile work environment and retaliatory harassment and hostile work environment and retaliatory disciplinary actions by Defendants in violation of the Civil Rights Act, Title VII, Section 1981 of the Civil Rights Act, Section 1983 of the Civil Rights Act, the First and Fourteenth Amendment of the United States's Constitution. and the Pennsylvania Human Relations Act.

## V.   STATEMENT OF CLAIM

## COUNT ONE – Title VII VIOLATIONS –Race Discrimination/Hostile Work Environment
## Plaintiff v. School District Only

84.   Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 83 as if the same were fully set forth at length herein.

85.   The acts and conducts of Defendant School District through its respective agents, officers, employees, and officials as stated above where Plaintiff was subjected

differential treatment because of her race and subjected to harassment and hostile work environment because of her race, are violations of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq.

86. As a direct result of the said discriminatory practices of the Defendant in violation of Title VII, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT TWO –TITLE VII VIOLATIONS-RETALIATION
### Plaintiff v. School District Only

87. Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 86 as if same were fully set forth at length herein.

88. The acts and conducts of the Defendant School District, through its agents, officers, and employees as stated above where Plaintiff was subjected to adverse employment actions and retaliatory harassment and hostile work environment because she engaged in protected activities under the statute are violations of Title VII.

89. As a direct result of said retaliatory practices of the Defendant, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT THREE – PHRA VIOLATION – RACE DISCRIMINATION
### Plaintiff v. Defendants School District, Jay Smit, and Marissa Litman

90. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 89 as if same were fully set forth at length herein.

91. The acts and conducts of Defendant School District through its agents, officers,

employees, and officials as stated above where Plaintiff was subjected to discriminatory treatment, harassment and hostile work environment because of her race were violations of the Pennsylvania Human Relations Act, Title 43 Pa. Cons. Stat. Ann. §951 et seq.

92.   Defendant Jay Smit and Marissa Litman aided and abetted the racial discrimination and hostile work environment of the Plaintiff and the violation of her rights under this statute.

93.   As a result of the said discriminatory practices of these Defendants in violation of the PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT FOUR – PHRA VIOLATION – RETALIATION
**Plaintiff v. Defendants School District, Jay Smit, Marissa Litman and Michelle Chapman**

94.   Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 93 as if same were fully set forth at length herein.

95.   The acts and conducts of Defendant School District through its agents, officers, employees, and officials as stated above where Plaintiff was subjected to retaliatory adverse actions and retaliatory harassment and hostile work environment because she engaged in protected activities are violations of the Pennsylvania Human Relations Act, Title 43 Pa. Cons. Stat. Ann. §951 et seq.

96.   Defendants Jay Smit, Marissa Litman and Michelle Chapman aided and abetted the retaliatory actions taken against Plaintiff and the violation of her rights under this statute.

97.   As a result of the said retaliatory practices of the Defendants in violation of the PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, mental anguish, emotional distress, humiliation, and

damages to reputation.

## COUNT FIVE –Section 1981 VIOLATIONS-Race Discrimination
### Plaintiff v. Defendants Jay Smit and Marissa Litman

98.  Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 97 as if same were fully set forth at length herein.

99.  The acts and conduct of Defendants Smit and Litman as stated above where Plaintiff was subjected to discriminatory treatment, harassment and hostile work environment because of her race were violations of the Civil Rights Act 42 USC §1981.

100.  Plaintiff is asserting her Section 1981 claims against these individual defendants via Section 1983 of the Civil Rights Act, as Defendants Smit and Litman were acting under color of state law when they engaged in this violation of Plaintiff's civil rights and her Constitutional rights of Equal Protection under the Fourteenth Amendment.

101.  As a direct result of said discriminatory practices of Defendants Smit and Litman, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT SIX –Section 1981 VIOLATIONS-Retaliation
### Plaintiff v. Defendants Jay Smit, Marissa Litman and Michelle Chapman

102.  Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 101 as if same were fully set forth at length herein.

103.  The acts and conducts of the Defendants Smit, Litman and Chapman as stated above where Plaintiff was subjected to retaliatory actions and retaliatory harassment and hostile work environment because she engaged in protected activities were violations of the Civil Rights Act 42 USC §1981.

104.   Plaintiff is asserting her Section 1981 claims against these individual defendants via

Section 1983 of the Civil Rights Act, as these Defendants were acting under color of state

law when they engaged in this violation of Plaintiff's civil rights.

105.   As a direct result of said retaliatory actions of the Defendants, Plaintiff has sustained loss

of wages and earnings, loss of benefits, loss of future earning power, loss of back pay,

front pay, interest due therein as well as mental anguish, emotional distress, humiliation,

and damages to reputation.

### COUNT SEVEN –Section 1983 VIOLATIONS-Race Discrimination
### Plaintiff v. School District of Philadelphia

106.   Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 106

as if same were fully set forth at length herein.

107.   SDP violated Plaintiff's Constitutional rights under the Equal Protection Clause of the

Fourteen Amendment by denying her equal protection in her employment because of her

race, while acting under the color of state law.

108.   SDP subjected Plaintiff to race discrimination in violation of the Civil Rights Act, 42

USC Section 1981, while acting under color of state law.

109.   The acts and conducts of the Defendants as stated above where Plaintiff was subjected to

race motivated harassment and hostile work environment in violation of Plaintiff's

Constitutional rights of equal protection while acting under color of state law are

violations of the Civil Rights Act 42 USC Section 1983.

110.   The acts and conducts of the Defendants as stated above show that SDP was deliberately

indifferent to and acquiesced in the violations of Plaintiff's Constitutional rights to be

free from race discrimination and rights under the Civil Rights Act, Section 1981.

111.   The acts and conduct of Defendants stated above demonstrate that SDP has a policy, practice and custom of race discriminatory practices.

112.   SDP also violated Plaintiff's Fourteenth Amendment rights by directing, participating in, and /or condoning the unlawful racial motivated actions against Plaintiff by Jay Smit and Marissa Litman.

113.   The acts and conducts of SDP as stated above are violations of the Civil Rights Act 42 U.S. C. Section 1983.

114.   As a direct and proximate result of SDP's violation of the Civil Rights Act, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT EIGHT – SECTION 1983 VIOLATION-RETALIATION

## PLAINTIFF V. SDP

115.   Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 114 as if same were fully set forth at length herein.

116.   Plaintiff exercised her Constitutional rights by opposing and protesting Defendants' unlawful conducts, and complaining to authorities about been subjected to racial discriminatory actions.

117.   After complaining to SDP and the EEOC of been subjected to discriminatory conducts, Plaintiff was subjected to retaliatory actions by SDP for engaging in protected activities under the Constitution and under a federal law, the Civil Rights Act, Section 1981.

118.  The acts and conducts of SDP through its management officials as stated above where Plaintiff was subjected to adverse employment actions after complaining of and/or opposing race discrimination are violations of the Civil Rights Act 42 U. S. C. Section 1983.

119.  SDP was deliberately indifferent to the violations of Plaintiff's Constitutional rights and rights under federal statutes to be free from retaliation.

120.  SDP has a policy, practice and custom of retaliating against its employees for complaining about race discriminatory practices.

121.  SDP violated Plaintiff's First Amendment rights by directing, participating in, and /or condoning the unlawful retaliatory actions against Plaintiff.

122.  The acts and conducts of SDP as stated above are violations of the Civil Rights Act 42 U. S. C. Section 1983.

123.  As a direct and proximate result of said violation of the Civil Rights Act, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

**COUNT NINE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff v. Defendants Jay Smit, Marissa Litman and Michelle Chapman**

124.  Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 123 as if same were fully set forth at length herein.

125.  The acts and conduct of Defendants Jay Smit, Marissa Litman and Michelle Chapman as stated above were outrageous and with the intent to cause Plaintiff severe emotional distress.

126.   Defendants conduct was intentional or reckless disregard of the harm to Plaintiff, which was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized society.

127.   As a direct and proximate result of the conducts of these Defendants, Plaintiff has sustained severe mental anguish, emotional distress, and humiliation.

## VI.        PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully demands judgment against Defendants, and request that this Honorable Court:

A.   Enter judgment against Defendants and award Plaintiff back pay, front pay, loss of income, loss of benefits, pre and post judgment interests, costs of suit, liquidated damages, compensatory damages to make Plaintiff whole for all past and future emotional upset, mental anguish, humiliation, loss of life pleasures, loss of self-esteem and all pain and suffering arising from the discriminatory and retaliatory conducts of Defendants, punitive damages against the individual Defendants Jay Smit, Marissa Litman and Michelle Chapman, attorneys' fees and expert witness fees as permitted by law.

B.   Award such other equitable relief, as the Court may deem necessary and just, including but not limited to an Order to make whole.

C.   Declaring that the acts and practices complained of herein violate the Civil Rights Act, 42, U.S.C. Section 1983 protection against race discrimination and retaliation for protected activities based on race.

21

D. Declaring that the acts and practices complained of herein violate the 14th Amendment of the United States Constitution protections against race discrimination and retaliation for protected activities based on race .

E. Declaring that the acts and practices complained of herein violate the PHRA protections against race and gender discrimination and retaliation for protected activities based on race .

F. Declaring that the acts and practices complained of herein violate the Title VII protections against race discrimination and retaliation for protected activities based on race.

G. Enjoining and restraining the acts and practices complained of herein.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact raised by this complaint.

ABIONA LAW PLLC

Olugbenga O. Abiona, Esquire
Attorney ID # 57026
121 South Broad Street, Suite 1200
Philadelphia, PA 19107
(215) 833-8227
Attorney for Plaintiff

Dated: September 1, 2023



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/10/2023

**To:** Priscilla Johnson
1967 71st Avenue
Philadelphia, PA 19138
Charge No: 530-2023-06297

EEOC       Representative      and
telephone number:

Legal Unit
267-589-9707

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2023-06297.

On behalf of the Commission,

Digitally Signed By:Karen McDonough
07/10/2023

Karen McDonough
Deputy District Director

**Cc:**

Olugbenga Abiona
ABIONA LAW, PLLC
P.O. Box 3326
Cherry Hill, NJ 08034


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 530-2023-06297 to the District Director at Jamie Williamson, 801 Market St Suite 1000

Philadelphia, PA 19107.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.