IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRISCILLA M. JOHNSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3430 |
| | : | |
| SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                                                                    **April 24, 2024**

  Plaintiff Priscilla M. Johnson brings this action against her former employer, the School District of Philadelphia ("School District"), and School District employees Jan Smit, Marissa Litman, and Michelle Chapman, alleging the School District's termination of her employment was racially discriminatory. In her nine-count complaint, Johnson asserts § 1983 claims for violations of the Fourteenth Amendment and 42 U.S.C. § 1981 against the School District. She also asserts claims against the Defendants for race discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, § 1981, and the Pennsylvania Human Relations Act ("PHRA"). Finally, Johnson brings a claim for intentional infliction of emotional distress against the individual Defendants.

  Defendants have jointly filed a motion to dismiss all claims. Because Johnson has not pleaded an official policy or established custom of racial discrimination in employment by the School District, the § 1983 claims against the School District will be dismissed. And since Johnson has not shown the conduct at issue was sufficiently severe, pervasive, or outrageous to support hostile work environment claims or an intentional infliction of emotional distress claim, these claims will also be dismissed. But because the complaint raises an inference of discrimination based on (a) Johnson's differential treatment during a COVID-19 outbreak and (b) comments by

1

her supervisors, the motion will be denied as to the race discrimination claims against the School District, Smit, and Litman. Finally, because Johnson's supervisors and the School District terminated her employment shortly after she filed suit, the Court will deny the motion to dismiss Johnson's retaliation claims.

**BACKGROUND**

The School District of Philadelphia hired Plaintiff Priscilla Johnson, an African American woman, as a Special Project Assistant in 2002. Am. Compl. ¶ 11, ECF No. 4. From September 2002 until October 2022, Johnson worked in the Office of Specialized Services, eventually becoming a Program Manager in July 2020. *Id*. ¶¶ 12, 14-15. As a School District employee, Johnson "over[saw] and maintain[ed] compensatory education for families of children with special needs that sued the School District." *Id*. ¶ 16. In October 2022, the compensatory education team, which included Johnson and Patricia Haines (another African American woman), was reassigned from the Office of Specialized Services to the Office of Finance. *Id*. ¶ 14. In the Office of Finance, Johnson's direct supervisor was Defendant Jan Smit, a Caucasian man and the Assistant Director of Financial Services. *Id*. ¶¶ 8, 21. Johnson was also supervised by the Office's Director, Defendant Marissa Litman, a Caucasian woman. *Id*. ¶¶ 9, 24.

In November 2022, shortly after Johnson's reassignment, Litman described Johnson as "combative" during a team meeting. *Id*. ¶¶ 24-25. Johnson explained she "wasn't being combative," but was simply "politely express[ing] her concerns." *Id*. ¶ 24. In another team meeting, Litman told Johnson and Haines: "I don't know what it is with you, either it's your personalities or you just shut down on purpose. I feel like you guys are this big black box." *Id*. ¶ 27. Litman also asserted that Johnson and Haines did not like to share information. *Id*. ¶ 30. Johnson responded:

> I have learned to listen carefully before speaking, and if something doesn't require a response, then I will not respond. If I had responded back in any tone, then you would be calling me other things such as an angry Black woman, combative, as well as characterizing me as not getting along well with others, aggressive, etc.

*Id.* ¶ 31. During a third team meeting, Litman called Haines and Johnson "gas lighters." *Id.* ¶ 35. Finally, during a one-on-one meeting, Smit told Johnson she was "angry." *Id.* ¶ 52. Johnson replied, "Oh here we go with the words; just because I am expressing myself does not make me angry." *Id.*

In addition to making these comments, on March 1, 2023, Litman informed the team that some employees had contracted or been exposed to COVID-19. *Id.* ¶ 38. Although several employees who sat close to Johnson and Haines were out of the office, Litman "was not straight forward" when Haines inquired about potential exposure. *Id.* ¶¶ 38-39. Litman told Haines that because she and Johnson normally wore masks, "they were not exposed." *Id.* ¶ 39. No one notified Johnson or Haines they were a close contact of someone with COVID, even though the rest of the team had been notified and was working from home. *Id.* ¶¶ 39-40. Finally, Johnson alleges Smit and Litman "micromanag[ed] the Comp[ensatory] Ed[ucation] emails, phone logs, etc. and select[ed] who [Johnson and Haines] should respond to, when to respond, and how to respond." *Id.* ¶ 56.

On April 10, 2023, Johnson filed an internal complaint with the School District alleging Smit and Litman were creating a "racially motivated hostile work environment." *Id.* ¶ 64. On April 24, 2023, Johnson met with Colleen Osborne to discuss the complaint.[1] *Id.* ¶ 65. Osborne told Johnson that "just because someone was calling her names didn't mean it was race discrimination," and the School District did not take any other action in response to the complaint. *Id.* ¶¶ 67-68. Then, on May 16, 2023, Smit and Litman placed Johnson on a Performance Improvement Plan

---

[1] The complaint does not identify Osborne's position with the School District. *See* Am. Compl. ¶ 65, ECF No. 4.

3

("PIP"). *Id*. ¶ 69. This was the first time Johnson received any type of disciplinary warning or action in her twenty years of employment with the School District. *Id*. ¶ 71. On June 26, 2023, she filed a race discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id*. ¶ 73.

Two months later, on August 21, 2023, Johnson met with Smit to discuss the final PIP report. *Id*. ¶ 75. Michelle Chapman, Deputy of the School District's Office of Labor and Employee Relations, was also present. *Id*. ¶ 77. In the report, Smit recommended Johnson's termination. *Id*. ¶ 78. On August 29, 2023, Johnson met with Hearing Officer Sheila Wallin in the Office of Labor Relations to discuss the termination recommendation. *Id*. ¶¶ 85-89. At this meeting, Johnson told Wallin she had filed a discrimination complaint internally and with the EEOC. *Id*. ¶ 90.

On September 1, 2023, Johnson commenced this civil action, and she effected service of the complaint and summons on all Defendants on September 8, 2023. *See* ECF Nos. 1, 3. The same day, the Defendants suspended Johnson without pay and recommended her termination to the Board.[2] Am. Compl. ¶ 93, ECF No. 4. Johnson filed an amended complaint on September 19, 2023, and Defendants filed a motion to dismiss on October 11, 2023. ECF Nos. 4, 6. Johnson filed a response in opposition on October 19, 2023, and the motion is now ripe for review. ECF No. 7.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference

---

[2] The complaint does not further specify the precise entity or individual to whom this recommendation was made.

that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construes the facts and the reasonable inferences therefrom "in a light most favorable to the [the plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

Defendants have moved to dismiss all claims against them. The Court will discuss each claim in turn, beginning with the claims that will be dismissed. Thereafter, the Court will discuss the claims that survive the Defendants' motion to dismiss. First, Johnson's § 1983 claims against the School District, asserting violations of the Equal Protection Clause and § 1981, will be dismissed based on Johnson's failure to allege a policy or custom of race discrimination or failure to investigate by the School District. Second, Johnson's hostile work environment claims under Title VII, § 1981, and the PHRA will be dismissed, as the conduct at issue was not "severe or pervasive." Similarly, Johnson's claim for intentional infliction of emotional distress will be dismissed since the conduct in this lawsuit was not "extreme and outrageous." But because Johnson has alleged similarly situated comparators in her Office were treated differently and has identified numerous comments by her supervisors invoking racial stereotypes, the motion to dismiss will be denied as to Johnson's race discrimination claims under Title VII, § 1981, and the PHRA. Finally, because there was a close temporal connection between Johnson's various

5

protected activities and her termination, the motion to dismiss will be denied as to Johnson's retaliation claims.

The Court first addresses Johnson's claims against the School District pursuant to 42 U.S.C. § 1983, alleging her termination violated the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. § 1981 (Counts Seven and Eight). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A school district is treated as a municipal entity under § 1983. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58 (2009). To plead a § 1983 claim against such an entity, a plaintiff must allege the entity's custom, policy, or practice caused the violation of the plaintiff's rights. *Id*. (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Because Johnson has not alleged the School District has an official policy or custom of discrimination or retaliation, the motion to dismiss will be granted as to her § 1983 claims against the School District.[3]

To establish a municipal policy for § 1983 purposes, a plaintiff must show "an official with final decision-making authority has issue[d] an official proclamation, policy, or edict." *Baloga v.*

---

[3] Although Defendants moved to dismiss Johnson's § 1983 claims, they did not raise the issue of Johnson's failure to allege a custom or policy. *See* Mem. Law Supp. Defs.' Mot. Dismiss 7-12, ECF No. 6. But Johnson preemptively raised the issue in her response to the motion. *See* Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss 12-14, ECF No. 7. Generally, "sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint." *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 119 (3rd Cir. 2017) (citation omitted). Where the litigant has had the opportunity to address the issue orally or in writing, however, a court may sua sponte "raise the issue of the deficiency of a pleading under Rule 12(b)(6)." *Id.* at 119 n. 25 (citation omitted). Because Defendants in this case moved to dismiss the § 1983 claims on other grounds, Johnson was on notice of the potential for dismissal of these claims. She also addressed the issue of municipal liability in her own briefing. Accordingly, this Court considers whether she sufficiently pleaded a basis for municipal liability under § 1983 sua sponte.

*Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019) (alteration in original) (internal quotation marks and citation omitted). To establish a custom, a plaintiff must show "a course of conduct, though not authorized by law, was so permanent and well settled as to virtually constitute law." *Id*. (internal quotation marks and citation omitted). Either way, the policymaker "must be responsible either for the policy or, through acquiescence, for the custom." *Id*. (internal quotation marks and citation omitted). Johnson has not identified any "official proclamation, policy, or edict." *Baloga*, 927 F.3d at 761. Instead, she argues the School District has "acquiesced" to a custom of race discrimination by failing to investigate her complaint. Am. Compl. ¶ 68, ECF No. 4; *see also* Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss 12-14, ECF No. 7.

In general, a plaintiff cannot establish a municipal custom through "a single incident of unconstitutional activity . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Absent such a policy, a plaintiff must plead "multiple incidents" of unlawful conduct. *See, e.g.*, *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons). And where a plaintiff alleges failure to investigate, they must show the violation resulted from "deliberate indifference to the constitutional rights of [the municipality's] inhabitants." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (alteration in original) (citation omitted). A plaintiff's allegation of failure to investigate the plaintiff's own case paired with "vague assertions about . . . failure to investigate other wrongdoings" is not sufficient to show "the level of deliberate indifference required for § 1983 liability." *Id*.

7

Johnson has failed to plead a municipal custom of race discrimination or failure to investigate. She has not alleged multiple incidents of discrimination, i.e., that multiple Black female employees have been terminated because of their race. And she has not shown the School District's failure to investigate her complaint against Smit and Litman constituted deliberate indifference. After Johnson filed the complaint, she met with another School District employee, Colleen Osborne. Am. Compl. ¶¶ 65-67, ECF No. 4. Because this meeting did not result in disciplinary action against Smit and Litman, Johnson claims "the School District acquiesced in the racially motivated hostile work environment." *Id.* ¶ 68. But she has not alleged the School District failed to investigate any case other than her own. As such, Johnson has not established a pattern by the School District of failure to investigate which demonstrates its deliberate indifference. Because Johnson has not identified a policy or custom of race discrimination and/or failure to investigate by the School District, the motion to dismiss is granted as to the § 1983 claims.

The Court next turns to Johnson's claims alleging a hostile work environment against the School District under Title VII and the PHRA (Counts One and Three) and against Smit and Litman under the PHRA and § 1981 (Counts Three and Five).[4] Hostile work environment claims under Title VII, § 1981, and the PHRA are "analyzed coextensively." *Anderson v. Boeing Co.*, 694 F. App'x 84, 89 n. 13 (3d Cir. 2017). To state a claim for hostile work environment, a plaintiff must show "(1) the employee suffered intentional discrimination because of his/her [race], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability [meaning the employer is responsible]."

---

[4] Johnson's § 1981 claim against Smit and Litman is asserted pursuant to 42 U.S.C. § 1983. *See McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009) (noting because §1981 does not create an implied right of action, the enforcement remedy is § 1983).

*Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (alterations in original) (citation omitted). Because Johnson has not shown the conduct at issue in this case was "severe or pervasive," the hostile work environment claims will be dismissed.

"For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racist slurs, there must be a steady barrage of opprobrious racial comments." *Tourtellotte v. Eli Lilly & Co.*, Civ. No. 09-774, 2013 WL 1628603, at *8 (E.D. Pa. Apr. 16, 2013) (citation omitted). Racist comments which are "sporadic or part of casual conversations" do not rise to that level. *Id*. While the comments in this case invoked racial stereotypes, *see infra* pages 11-12, they fall short of "a steady barrage." *Id*; *see Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 75-76 (3d Cir. 2003) (concluding managers' comments that "the way they [two African-American employees] were eating at their desks, it must be their culture," and that if those employees did not work, the speaker was "going to sit at their desks with a whip," were not severe or pervasive); *see also, e.g.*, *Woodard v. PHB Die Casting*, Civ. No. 04-141, 2005 WL 3093180, at *4 (W.D. Pa. Nov. 18, 2005) (granting summary judgment for defendant on a hostile work environment claim where supervisors used racist slurs, but very few comments were directed toward plaintiff in his presence). Accordingly, the motion to dismiss Johnson's hostile work environment claims will be granted.

Johnson also brings a claim for intentional infliction of emotional distress against the three individual Defendants Smit, Litman, and Chapman (Count Nine). Under Pennsylvania law, the tort of intentional infliction of emotional distress has three elements. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987). The defendant's conduct must be both (1) extreme and outrageous and (2) intentional or reckless, and it must (3) cause severe emotional distress. *Id*. "Conduct rises to the 'extreme and outrageous' level if it is 'so outrageous in character, and so

9

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Doe v. Moravian Coll.*, Civ. No. 20-377, 2023 WL 144436, at *10 (E.D. Pa. Jan. 10, 2023) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). Defendants argue Johnson's allegations do not "rise to that level of severity." Mem. Law Supp. Defs.' Mot. Dismiss 12, ECF No. 6. The Court agrees. Although the comments by Smit and Litman invoked racial stereotypes, they do not rise to the level of extreme and outrageous.

It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Robinson v. Nat'l R.R. Passenger Corp.*, 821 F. App'x 97, 102 (3rd Cir. 2020) (citation omitted). "[A]llegations of racial discrimination, even when coupled with retaliatory conduct," are not sufficiently "outrageous" conduct to state a claim for intentional infliction of emotional distress. *Parker v. Cenlar FSB*, Civ. No. 20-2175, 2021 WL 22828, at *6 (E.D. Pa. Jan. 4, 2021). The conduct at issue here consists of comments by Smit and Litman that Johnson was "combative," "angry," and a "gaslighter;" a failure to notify her of a potential COVID-19 exposure; and micromanagement. *See* Am. Compl. ¶¶ 24-25, 35, 38-40, 52, 56, ECF No. 4. This conduct is far below the extreme or outrageous standard, and so the motion to dismiss will be granted as to Johnson's claim for intentional infliction of emotional distress.

The Court next turns to Johnson's claims for race discrimination against the School District under Title VII and the PHRA (Counts One and Three), and against Smith and Litman under the PHRA and § 1981 (Counts Three and Five).[5] Like claims for hostile work environment, race discrimination claims under Title VII, § 1981, and the PHRA "are analyzed coextensively." *Anderson*, 694 F. App'x at 86 n. 4. To state a claim for race discrimination, a plaintiff must show

---

[5] As noted above, Johnson asserts the § 1981 claim pursuant to 42 U.S.C. § 1983.

(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) similarly situated individuals were treated more favorably, or the adverse employment action occurred under circumstances which give rise to an inference of discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). Defendants challenge Johnson's claims under the fourth element, arguing she "fails to identify any better treated comparator" or any other circumstances giving rise to an inference of discrimination, as the comments alleged in the Amended Complaint were "facially neutral." Mem. Law Supp. Defs.' Mot. Dismiss 8, ECF No. 6. Because Johnson references comparators (the rest of the team) and alleges she was subjected to comments employing racial stereotypes, the motion to dismiss her claims for race discrimination will be denied.

The Court considers the comparator issue first. A plaintiff may establish a prima facie case of discrimination by showing similarly situated individuals received more favorable treatment, but it is not required. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268-69 (3d Cir. 2010) ("Although comparative evidence is often highly probative of discrimination, it is not an essential element of a plaintiff's case."). And although Johnson does not specifically name similarly situated individuals, she alleges "the rest of her team" was informed of a COVID-19 exposure and permitted to work from home, while she and Haines were not. *See* Am. Compl. ¶¶ 38-41, ECF No. 4. Johnson has thus alleged the existence of comparators in one context.

As to Defendants' argument that the comments alleged in the Amended Complaint were "facially neutral,"

> [w]hen a plaintiff bases the inference of discrimination on allegations that she was subjected to racially offensive comments in the workplace, to survive a motion to dismiss, the plaintiff's complaint should describe with particularity the comments made, indicate who made the comments and when, and show that the defendant knowingly allowed the comments to be made.

11

*Grasty v. World Flavors, Inc.*, Civ. No. 11-1778, 2011 WL 3515864, at *6 (E.D. Pa. Aug. 11, 2011). District courts in this circuit have recognized the "perniciousness" of the "angry Black woman" trope and have held the invocation of this stereotype may serve as evidence of discriminatory animus, even where the invocation is not explicit. *See, e.g.*, *Curry v. Devereux Found.*, 541 F. Supp. 3d 555, 561 (E.D. Pa. 2021); *see also Blount v. TD Bank, N.A.*, Civ. No. 20-18805, 2023 WL 4621881, at *13 (D.N.J. July 19, 2023).

Johnson identifies a series of comments by her supervisors referring to her as "combative," "angry," and a "gas lighter."[6] Am. Compl. ¶¶ 24-25, 52, 35 ECF No. 4.  Insofar as these comments invoke the angry Black woman trope, they are sufficient at this stage of litigation to give rise to an inference of discriminatory animus. *See, e.g.*, *Blount*, 2023 WL 4621881, at *13 (concluding references to the Black, female plaintiff as "aggressive," "not a team player," and a "lone wolf" invoked the angry Black woman stereotype). Because Johnson has described comparators in one context and identified comments which give rise to an inference of discrimination, Defendants' motion to dismiss will be denied as to Johnson's race discrimination claims under Title VI, the PHRA, and § 1981.

Finally, the Court turns to Johnson's claims for retaliation. She asserts retaliation claims under Title VII against the School District (Count Two), under § 1981 against Smit, Litman, and Chapman (Count Six), and under the PHRA against all Defendants (Count Four). As with race discrimination and hostile work environment claims, the analysis of retaliation claims under Title

---

[6] Defendants contend Litman was describing herself as "not being 'combative'" when she made this comment. Mem. Law Supp. Defs.' Mot. Dismiss 8, ECF No. 6. The Court, however, must construe the factual allegations and all reasonable inferences therefrom in the light most favorable to Johnson at this stage of litigation, and Johnson alleges the "combative" comment described her, not Litman. Am. Compl. ¶ 25, ECF No. 4.

VII, § 1981, and the PHRA is the same. *Anderson*, 694 F. App'x at 86 n. 4. To state a retaliation claim, a plaintiff must show (1) she engaged in a protected employment activity; (2) the employer took an adverse employment action against her; and (3) a causal link between the protected activity and the adverse employment action. *Id*. at 88. Defendants do not dispute that Johnson engaged in a protected activity, or that they terminated her employment. Instead, they argue Johnson has not shown a causal link because she has not alleged Smit, Litman, and Chapman were "aware of her protected activity." Mem. Law Supp. Defs.' Mot. Dismiss 11, ECF No. 6. Because Johnson has alleged (1) Defendants knew of her protected opposition conduct and (2) a close temporal connection between her protected participation conduct and her termination, the motion to dismiss will be denied as to the retaliation claims.

A plaintiff can show causation through "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of antagonism coupled with timing; or (3) that from the evidence gleaned from the record as a whole the trier of fact should infer causation." *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 355 (E.D. Pa. 2012) (internal quotation marks and citation omitted). And plaintiffs can "rely upon a broad array of evidence" to do so. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000). In the context of Title VII, protected activity consists of "opposition" conduct and "participation" conduct. *See Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265-66 (3d Cir. 2006) (discussing 42 U.S.C. § 2000e–3(a)). Opposition conduct occurs when an employee "oppose[s] any practice made an unlawful employment practice" by Title VII, and participation conduct occurs when an employee "has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing" under Title VII. *Id*. at 265 (quoting 42 U.S.C. § 2000e–3(a)).

Johnson contends her responses to Smit and Litman's comments invoking the angry Black woman trope were protected opposition conduct. *See* Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss 8, ECF No. 7. Defendants thus were aware of protected activity because Johnson made opposition comments directly to them. *See* Am Compl. ¶¶ 31, 35, 52, ECF No. 4. Smit and Litman then recommended Johnson's placement on a Performance Improvement Plan, and Smit ultimately recommended Johnson's termination. *See id.* ¶¶ 69, 78. Johnson has therefore pleaded a causal connection between her protected opposition conduct and the adverse employment actions. *See Curry*, 541 F. Supp. 3d at 562-63 (finding a plaintiff's rejection of the angry Black woman stereotype was protected opposition conduct and retaliation may have been a causal factor in her non-promotion).

Additionally, it is undisputed that Johnson filed an internal complaint against Smit and Litman, as well as a complaint with the EEOC, both of which constitute protected participation conduct. *See Slagle*, 435 F.3d at 266 (noting Title VII's participation clause "offers much broader protection" than the opposition clause); *see also Collins v. Kimberly-Clark Pa.*, 247 F. Supp. 3d 571, 599 (E.D. Pa. 2017) ("protected activity extends beyond formal complaints . . . and can include informal protests such as Plaintiff's internal and email complaints" (internal quotation marks and citation omitted)). One week after Johnson filed this action, and the same day Defendants were served with the complaint and summons, Johnson was suspended without pay and recommended for termination. Am. Compl. ¶¶ 92-93, ECF No. 4; *see also* Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss 10, ECF No. 7. The short amount of time between either activity and her suspension—a week or on the same day—is an "unusually suggestive" temporal proximity sufficient to show causation. *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) ("Where the

temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality."). Because Johnson has shown a causal connection between her protected conduct and her discipline and termination, the motion to dismiss is denied as to the retaliation claims.

**CONCLUSION**

Defendants' motion to dismiss will be granted as to (1) Johnson's § 1983 claims against the School District for violations of the Fourteenth Amendment and § 1981; (2) Johnson's hostile work environment claims against the School District, Smit, and Litman under Title VII, § 1981, and the PHRA; and (3) Johnson's claim for intentional infliction of emotional distress against Smit, Litman, and Chapman. The motion to dismiss will be denied as to (1) Johnson's race discrimination claims against the School District under Title VII and the PHRA and against Smit and Litman under the PHRA and § 1981; and (2) Johnson's retaliation claims against the School District under Title VII and the PHRA and against Smit, Litman, and Chapman under the PHRA and § 1981.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.